IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Lewis T. Babcock**

Civil Action No. 12-cv-02160-LTB

DARRICK LOVE,

      Applicant,

v.

TOM CLEMENTS, Executive Director, CDOC, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

      This matter is before me on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, filed by Applicant Darrick Love.  Applicant was acting *pro se* at the time he initiated this action.  Subsequent to Respondents answering the Application on the merits, counsel filed a Reply to the Answer on behalf of Applicant.  Counsel's signing and submitting the Reply is deemed an appearance by counsel on Applicant's behalf.  *See* D.C.COLO.LCivR.11.1(a).

### I. Background

      In 1999, the People charged defendant with first degree murder after deliberation, felony murder, and robbery.  The charges arose out of a shooting and robbery allegedly involving defendant and a co-defendant. Following a trial in 2000, at which defendant was represented by attorneys with the Public Defender's Office, a jury convicted defendant of the lesser nonincluded offense of theft, but acquitted him of felony murder and robbery.  The jury could not reach a verdict on the charge of first degree murder after deliberation.

      In 2001, defendant was retried for first degree murder after deliberation.  Again, he was represented by attorneys with the Public

Defender's Office.  A jury convicted him of the lesser included offense of second degree murder.  In September 2001, the district court sentenced him to consecutive terms in prison of forty-eight years for second degree murder and six years for theft.

Another division of this court reversed defendant's conviction, vacated his sentence, and remanded the case for a new trial on the second degree murder charge, concluding that the district court had erred in denying the jury's request to view a trial transcript in the absence of defendant and his counsel.  *People v. Love*, (Colo. App. No. 01CA2194, Mar. 25, 2004) (not published pursuant to C.A.R. 35(f)).  The mandate was issued on January 25, 2005, and received by the district court the next day.

Following a third jury trial, at which defendant was again represented by Public Defenders, defendant was convicted of second degree murder and sentenced to forty-eight years in the custody of the Department of Corrections.

*People v. Love*, No. 06CA1632, 1-2 (Colo. App. June 17, 2010).

The Colorado Court of Appeals (CCA) affirmed the conviction and sentence in the second retrial, *id.*, and the Colorado Supreme Court (CSC) denied Applicant's petition for certiorari review, *see Love v. People*, No. 2010SC564 (Colo. June 20, 2011). Applicant then filed a Colo. R. Crim. P. 35(b) postconviction motion on October 24, 2011, that was denied on January 27, 2012.  *See* Pre-Answer Resp. ECF No. 11-1, Appx. A at 8-9.  Applicant did not appeal the denial, but he did file a petition for relief pursuant to C.A.R. 21 on March 22, 2012, *id.* at 8, that was summarily denied on May 31, 2012, *Id.*, ECF No. 11-10, Appx. I.

In this action, Applicant asserts: (1)Right to Speedy Trial Violation; (2)Burden to Request Counsel; (3) Right to Self-Representation Violation; and (4)Prosecutorial Misconduct. On February 11, 2013, I found that Claims Two and Four are not separate federal constitutional claims but are arguments in support of Claim One and ordered

2

Respondents to file an Answer regarding the alleged violations of Applicant's right to a

speedy trial and his right to self-representation.  Respondents filed an Answer, ECF No.

21, on April 11, 2013.  Applicant, through counsel, filed a Reply to the Answer on May 9,

2013.  After reviewing the Application, the Answer, the Reply, and the state court

record, I conclude that the Application should be denied and the case dismissed with

prejudice for the following reasons.

## II.  Legal Standard

### A.  *Pro Se* Standard of Review

Applicant appeared *pro se* when he filed his Application.  I, therefore, review the

Application liberally and hold the pleading to a less stringent standard than those

drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007)

(citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However,

a *pro se* litigant's "conclusory allegations without supporting factual averments are

insufficient to state a claim on which relief can be based."  *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991).  A court may not assume that an applicant can prove facts

that have not been alleged, or that a respondent has violated laws in ways that an

applicant has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

*Council of Carpenters*, 459 U.S. 519, 526 (1983).  An applicant's *pro se* status does not

entitle him to an application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 958

(10th Cir. 2002).

**B.  28 U.S.C. § 2254**

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an

4

unreasonable application of that clearly established rule of federal law.  *See Williams*,

529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [ (10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House,* 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one.

*See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ

simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.

Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law."  *Maynard*,

468 F.3d at 671.

In addition,

> evaluating whether a rule application was unreasonable
> requires considering the rule's specificity.  The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations.  It is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S. Ct. 770, 786,  --- U.S. --- (Jan. 19, 2011) (internal quotation

marks and citation omitted).  I "must determine what arguments or theories supported or

. . . could have supported[ ] the state court's decision" and then "ask whether it is

possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.*  "Even a

strong case for relief does not mean the state court's contrary conclusion was

unreasonable."  *Id.* (citation omitted).  "Section 2254(d) reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice systems, not

a substitute for ordinary error correction through appeal."  *Id.* (citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671.

Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a
> federal court, a state prisoner must show that the state
> court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.  Applicant bears the burden of proof under § 2254(d).

*See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

6

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2)

allows a court to grant a writ of habeas corpus only if the state court decision was based

on an unreasonable determination of the facts in light of the evidence presented.

Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations

are correct and Applicant bears the burden of rebutting the presumption by clear and

convincing evidence.  "The standard is demanding but not insatiable . . . [because]

'[d]eference does not by definition preclude relief.' "  *Miller-El v. Dretke*, 545 U.S. 231,

240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the

absence of a statement of reasons by the state court for rejecting the claim.  *Richter*,

131 S. Ct. at 784. ("[D]etermining whether a state court's decision resulted from an

unreasonable legal or factual conclusion does not require that there be an opinion from

the state court explaining the state court's reasoning").  Furthermore, "[w]hen a federal

claim has been presented to a state court and the state court has denied relief, it may

be presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law procedural principles to the contrary."  *Id.* at 784-85.  Even

"[w]here a state court's decision is unaccompanied by an explanation, the habeas

petitioner's burden still must be met by showing there was no reasonable basis for the

state court to deny relief."  *Id.* at 784.  Although *Richter* concerned a state-court order

that did not address any of the defendant's claims, its presumption is applicable when a

state-court opinion addresses some but not all of those claims. *Johnson v. Williams*, —

U.S. —, 133 S. Ct. 1088, 1094-98 (2013).

7

In other words, I "owe deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." Id.

Likewise, I apply the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the petitioner as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III.  Analysis

### A.  Right to Speedy Trial

In Claim One, Applicant asserts that the trial court exceeded it's authority and jurisdiction when it waived his speedy trial rights, even though he stated he did not want to do so. Applicant further asserts, in Claim Two, that the court improperly found an implied waiver of Applicant's speedy trial rights in his second retrial. Finally, in Claim Four, Applicant asserts that the delay in his trial was a result of prosecutorial bad faith

because the prosecution was not ready to proceed to trial even though they told the

court that they were.

The CCA concluded that Applicant had waived his speedy trial rights based on

the following proceedings in the trial court:

> Defendant was not brought before a judge following the receipt of the mandate until a hearing on July 11, 2005.  At the hearing, defendant filed a pro se motion to dismiss for violation of his right to a speedy trial.  The prosecutor stated:
>
>> [M]y understanding is the mandate came down quite some time ago.  I just happened to be on a state judicial last week and noticed that it had come back some time ago.  I was out of the office.  I asked [another prosecutor] in my office to get this set as quickly as possible.
>
> Following some discussion regarding the date of mandate and trial, defendant stated:
>
>> [M]y issue is the sentence was vacated.  I've been sitting in a level four maximum security prison for approximately 167 days to date, and I get down here and I haven't seen counsel.  I haven't talked to counsel the whole time that I've been waiting.  I get down here and I've been told that I have a trial date set for the 18th of July; and when I did talk to counsel as of yesterday, I was asked if I would be willing to waive my speedy trial, which would give the prosecution more time to be prepared.  They say that they're ready, but I feel that if they was [sic] ready, I should have been down here.  Now I'm forced and put in a position to waive my speedy trial, or have a fair trial, and it's my right to have a fair trial and effective counsel.  I shouldn't be forced by due process of law to have to barter one for the other.
>
> The court responded:
>
>> You're not. The statute says that you get a trial date within six months of the date the mandate was received.  You did.
>> . . . .

So that gives you a choice -- three choices as I see it.  You can waive your speedy trial and I'll appoint the Public Defender to represent you and they'll get a case worked up. Secondly, I can appoint the Public Defender, they can go to trial with you on Monday -- that would be ludicrous for both of you -- or you can represent yourself, which would be crazy.
. . . .

Defendant:  Well, I'm ready to go.  I'm not going to waive my speedy trial.

Court:  You want . . . me to appoint the Public Defender or do you want to represent yourself?

Defendant: Appoint the Public Defender.

Defense Counsel:  Judge, we cannot be effective in one week on a murder trial.

The court called a recess so that the two Public Defenders present could review the file and determine whether they could prepare for trial within one week.  Following the recess, a Public Defender declared, "[W]e cannot accept appointment for a trial on Monday."

The court then stated to defendant, "Okay. Well, I guess you get to go to trial by yourself then, Mr. Love."  Defendant replied, "Good, 'cause I'm not going to waive my speedy."  The court then discussed the "dilemma" created by defendant's desire to be represented by the Public Defender and the speedy trial deadline.

A discussion ensued concerning the large number of witnesses in the case, the difficulty in preparing for a murder trial, and the need to preserve defendant's right to effective assistance of counsel.  During that discussion, the court, without any objection by defendant, observed that defendant "want[ed] the Public Defender to represent" him and that defendant "does not wish to waive his right to counsel . . . ."  The court then concluded that defendant had implicitly waived his right to speedy trial:

[T]here's certainly no express waiver on the part of the defendant; in fact, I think everyone acknowledged that the defendant is as strongly as he possibly can telling me he wants to go to trial within the current speedy trial limitations. I understand that, but I also understand that sometimes the

10

law puts one between rocks and hard places, and that's where we are right now.

This is an issue where balancing is required, and I have to look at the balancing out of all of the various factors involved in this case. I am, albeit somewhat reluctant to do so, but I am going to appoint the Public Defender's office. I'm going to find that under the circumstances there is implied waiver of speedy trial.

The court subsequently vacated the July 18, 2005 trial date and reset the trial for a date more than six months after the mandate had been received by the district court. Defendant timely moved for dismissal based on the failure to provide him a speedy trial. The district court denied that motion.

Defendant argues that because he clearly indicated that he was not waiving his speedy trial right and unequivocally invoked his right to represent himself, the court violated his statutory speedy trial right and the murder charge must be dismissed. The record clearly shows that defendant did not expressly waive his speedy trial right. But we conclude he implicitly did so because he did not unequivocally waive his right to counsel and invoke his right to represent himself.

. . . .

We reject defendant's suggestion that the People are responsible for the delay here because they waited so long after the remand to set the matter for trial. Though it is the state's obligation to demonstrate compliance with the speedy trial statute, *see Marquez v. Dist. Court*, 200 Colo. 55, 57-58, 613 P.2d 1302, 1303-04 (1980), the state did so here because the trial date was set within the speedy trial period. Defendant has not alleged, nor did he present any evidence, that the prosecutor deliberately or in bad faith delayed setting the trial date as a last " 'minute ploy to circumvent the requirements of the speedy trial provisions . . . .' " *Arlege*, 938 P.2d at 165 (quoting *Hampton v. Dist. Court*, 199 Colo. 104, 107-08, 605 P.2d 54, 57 (1980)).[5]   Rather it was defendant's belated request for a re-appointed counsel, leaving him unprepared for trial, that caused the trial date to be pushed beyond the speedy trial period.

[5]Defendant does contend that the prosecutor was not prepared to go to trial on July 18, and engaged in misconduct warranting dismissal by leading the court to believe that he was. But this argument is rife with speculation, and therefore we reject it.

The law is clear that once a defendant has been advised of his right to court-appointed counsel, it is the defendant's burden to request such counsel, and to do so by complying with certain requirements of statute and rule. *See* § 21-1-103(1)(a), (3), C.R.S. 2009 (court shall appoint counsel "if . . . [t]he defendant requests it and he complies with subsection (3) of this section [relating to submission by the defendant of an application form]"); CJD 04-04 § II.A (providing that a "defendant in a criminal case . . . requesting court-appointed representation" must complete a specific form applying for such counsel); *see also* Crim. P. 44(a) (court may appoint counsel "upon the defendant's affidavit or sworn testimony"); *Alengi*, 148 P.3d at 160-61; *Allen v. People*, 157 Colo. 582, 590-91, 404 P.2d 266, 271 (1965). Defendant twice complied with these requirements before the remand: once to obtain appointment of trial counsel and once to obtain appointment of appellate counsel. Following remand, it remained defendant's obligation to request appointed counsel in accordance with the applicable requirements if he desired to be represented by counsel at trial. That obligation did not somehow evaporate because of the remand, nor did it depend on the setting of any hearing by the prosecution or the court. Put another way, regardless of whether or when a hearing was set after remand (and no authority required any hearing before retrial), defendant was obligated to request a court-appointed attorney if he wanted one; neither the prosecution nor the court was required to take any action to determine if he again desired court-appointed counsel. Defendant, however, knowing that his conviction had been reversed and the charge against him remained pending, and knowing how to go about requesting appointed counsel, waited almost six months after remand to request appointed counsel. Contrary to the dissent's suggestion, that delay cannot under any reading of applicable legal authority be attributed to the state.[6]

> [6]The dissent incorrectly asserts that we hold a defendant must request counsel to preserve his speedy trial right. We note defendant's late request for appointed counsel to show only that it was the late request (for which neither the court nor the prosecution was responsible) that led to the resetting of the trial date after the speedy trial deadline. We reiterate that the court set the trial to begin within the speedy trial period, and that the prosecution was not responsible for the unpreparedness of the public defender.

Therefore, we conclude that the delay resulting in the setting of trial beyond the speedy trial period is attributable to defendant. There was no violation of his right to speedy trial.

*People v. Love*, No. 06CA1632, at 3-7 and 13-16.

12

In the February 11, 2013 Order to Dismiss in Part and for Answer, I found that Applicant (1) in the direct appeal of his second retrial relied on case law that discusses the right to a speedy trial based on the federal constitutional requirements set forth in *Barker*; (2) stated in the opening brief on appeal that his U.S. Constitutional rights were violated; (3) appears to have been subject to presumptively prejudicial delay; and (4) raised substantive arguments in the opening brief that address prejudice, presentation of a speedy trial claim at trial, and who is to blame for the delay, ECF No. 17 at 6.  For these reasons, I determined that state courts were on notice of a federal constitutional claim of a speedy trial rights violation, but they addressed the violation in terms of state statutory law.

Under federal constitutional law, a defendant's purported waiver of his speedy trial right is not dispositive, but it is instead considered under the *Barker* balancing test in determining whether a constitutional violation has occurred.  *See Barker v. Wingo*, 407 U.S. 514, 528-29, 531-32 (1972).  The CCA did not apply the *Barker* test to Applicant's claim on direct appeal of his conviction.  Instead, the state appellate court analyzed Applicant's claim under the state speedy trial statute, § 18-1-405, C.R.S. (2009).  Because the CCA did not fully analyze Applicant's claim under the federal Constitution, this Court reviews the claim *de novo*.  *See Gipson*, 376 F.3d at 1196.  A federal habeas court may uphold a conviction, even if a state court does not rely on federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts [federal law]."  *Early v. Packer*, 537 U.S. 3, 8 (2002).

The Sixth Amendment to the United States Constitution affords criminal defendants the fundamental right to a speedy trial.  U.S. Const. amend. VI.  The

fundamental right is imposed on the states by the Due Process Clause of the

Fourteenth Amendment.  *Klopfer v. North Carolina*, 386 U.S. 213, 222-23 (1967).

Under clearly established federal law four factors must be balanced in assessing

whether a criminal defendant's constitutional right to a speedy trial has been violated.

The factors are (1) the length of the delay; (2) the reason for the delay; (3) the extent to

which the defendant asserted his right to a speedy trial; and (4) any prejudice to the

defendant.  *See Barker v. Wingo*, 407 U.S. 514, 530-32 (1972).  "None of these factors,

taken by itself, is 'either a necessary or sufficient condition to the finding of a deprivation

of the right of speedy trial.  Rather, they are related factors and must be considered

together with such other circumstances as may be relevant.' "  *Jackson v. Ray*, 390

F.3d 1254, 1260-61 (10th Cir. 2004) (quoting *Barker*, 407 U.S. at 533).

    The first *Barker* factor, the length of the delay, "actually is a double enquiry."

*Doggett v. United States*, 505 U.S. 647, 651 (1992); *Jackson*, 390 F.3d at 1261.  As a

threshold matter, I need not consider the other *Barker* factors unless the delay is

"presumptively prejudicial."  *Barker*, 407 U.S. at 530.  "Depending on the nature of the

charges, the lower courts have generally found postaccusation delay 'presumptively

prejudicial' at least as it approaches one year."  *Doggett*, 505 U.S. at 652 n.1.  If the

length of the delay is presumptively prejudicial, I "must then consider, as one factor

among several, the extent to which the delay stretches beyond the bare minimum

needed to trigger judicial examination of the claim."  *Id.* at 652 (citing *Barker*, 407 U.S.

at 533-34.

    For purposes of the constitutional analysis, the speedy trial time period

commences when the defendant is first arrested or charged with committing a federal

offense and ends when his jury trial begins.  See *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (stating that the speedy trial right attaches at the earlier of either arrest or indictment).  The length of delay is measured from the time at which the speedy trial right attaches.  *See United States v. Marion*, 404 U.S. 307, 320-21 (1971). The CCA's mandate reversing and remanding issued on January 25, 2005, and was docketed on January 26, 2005.  *See* Case No. 1999CR4911, Register of Action (ROA) at 15 and 525.  The speedy trial right attached on January 26, 2005, when the mandate was received by the trial court.  *See* Colo. Rev. Stat. § 18-1-405(2).  The trial commenced on April 19, 2006, when jury selection was conducted.  Trial Tr., Apr. 19, 2006, at 34 (188) (The number in parenthesis identifies the sequence in the 1441 pages of transcripts.)  The delay is just shy of fifteen months, which I find to be presumptively prejudicial.

I then consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."  *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010) (quoting *Doggett v. United States*, 505 U.S. at 652) (internal quotation marks omitted), which in this case is three months.

The delay is not a lengthy period.  Applicant argues that, given this was the second retrial regarding the same first degree murder charges and criminal episode, the charges were not so complex or sophisticated to justify the delay.  However, the trial record for the second retrial indicates that the trial was six days long, involved at least seventeen witnesses, and introduced more than 130 exhibits.  Trial Tr. Apr. 19, 20, 21, 24, 25, and 26, 2006.  The case, therefore, was more complex than Applicant's characterization.  I find that while this length of delay is considered presumptively

15

prejudicial and may weigh in favor of Applicant for that reason, the delay is just beyond

a year.  Given the number of witnesses and exhibits and the six days needed to present

the case to the jury, the length of the delay does not weigh heavily in Applicant's favor.

The second *Barker* factor is the reason for the delay.  "The Supreme Court

places the burden on the state to provide an inculpable explanation for delays in speedy

trial claims." *Jackson*, 390 F.3d at 1261.  "[D]ifferent weights should be assigned to

different reasons." *Barker*, 407 U.S. at 531.  A deliberate attempt to delay a trial is

weighted heavily, whereas a missing witness serves as a justified appropriate delay. *Id.*

The reason for a delay weighs against the government in proportion to the degree to

which the government caused the delay. *Batie* 433 F.3d at 1291

Applicant asserts the reasons for delay were that the prosecution was not

prepared for trial even though they stated that they were ready.  Applicant, through

counsel, also contends that his charges were not so complex or sophisticated to justify

a delay by the state or the trial court, Reply, ECF No. 23, at 5, and that under the

Colorado speedy trial rule he clearly had to be brought to trial within six months of the

"date of entry of a plea," *id.* at 6.  Applicant concludes that his failure to complete the

form for court-appointed counsel did not toll the speedy trial period and Respondents

fail to identify any statutory exception to the six-month speedy trial rule, which tolled the

time Applicant could be timely brought to trial. *Id.*

The CCA found that Applicant had not complied with the Colo. Rev. Stat. § 21-1-

103(1) (2009), and it remained his responsibility to request appointment of counsel in

accordance with the applicable requirements if he desired to be represented by counsel.

*Love*, No. 06CA1632 at 14-15.  Further, the CCA found that it was not the court or the

prosecution's responsibility to determine if Applicant again desired court-appointed counsel. *Id.* at 15.  The CCA concluded that Applicant was given a trial date prior to the speedy trial and any delay is attributed to him.

Applicant's delay claim against the prosecution is conclusory and vague.  He does not state how the prosecution was not prepared for a retrial or why they would deliberately delay setting a trial date just to violate his speedy trial rights.  In the opening brief on appeal, Applicant, however, identifies events he believes indicate the prosecution was not prepared to proceed with the trial on July 18, 2005.  Pre-Answer Resp., ECF No. 11-2, Ex. B, at 30-35.

Applicant asserts in the opening brief that D.A. Pellow, who was one of two prosecutors in Applicant's first trial in October 2000 and retrial in May 2001, *see id.*, ECF No. 11-1, Ex. A, ROA at 21 and 28, appeared at the July 11, 2005 hearing and represented that the prosecution was ready to proceed with the second retrial on July 18, 2005, *Id.* Ex. B at 30.  Applicant contends Mr. Pellow could not have been ready to proceed because D.A. Jackson indicated to defense counsel that no trial preparation took place prior to Mr. Jackson assuming the case. *Id.*  In support of his lack of preparedness claim, Applicant also argued on direct appeal that at the time of the July 11, 2005 hearing Mr. Pellow had not issued subpoenas for the prosecution witnesses and had failed to arrange with the federal prison for an appearance of a key witness who at the time was in federal custody, and D.A. Jackson, long after the speedy trial deadline had run in January 2006, conceded he still had not located an eye witness from the previous trials. *Id.* at 32.  Applicant also argued on direct appeal that a Spanish interpreter for two witnesses had to be obtained and the new and more

17

sophisticated DNA analysis needed to be prepared and could not have been done between July 11 and 18, 2005. *Id.* at 34.

Applicant's claims are speculative. First, the DNA analysis was requested by two attorneys, including Mr. Jackson, who were assigned to Applicant's case after the trial date was set. Mr. Jackson stated during the pretrial hearing on January 3, 2006, that the request and the provision of the new analysis had nothing to do with Mr. Pellow's claim of readiness, because the prosecution would have proceeded to trial without the evidence, as was done in the original trial and the first retrial. Jan. 3, 2006 Hr'g Tr. at 8-10 (79-81). The trial court established that the results of the new DNA analysis did not change the state of the evidentiary record from the prior trial and the "evidence previously at trial was sufficient to indicate that the blood on Mr. Love's sweatshirt was attributable to some varying degree to the victim in this case." *Id.* at 12 (83). The new findings indicated that the blood of the victim also was found on Mr. Grissom's clothing, Applicant's codefendant, which even if not exculpatory is something that the defense agreed they would want to have the "lead" to use if they had wanted. *Id.* at 13 (84).

Applicant's claim that certain witnesses were unavailable and no subpoenas had been issued also is speculative. During the pretrial hearing on January 3, 2006, defense counsel renewed a motion to dismiss based on speedy trial grounds and stated that certain witnesses were not available, including Mr. Sudduth, a federal prisoner, Mssrs. Cramer and Peak, police officers, and Ms. Childress, an eyewitness. *Id.* at 19-21 (90-92). Nonetheless, as pointed out by the prosecution at the January 3, 2006 hearing, defense counsel may not infer that because a witness is not available for the January 4, 2006 trial he or she also would not have been available for a July 18, 2005

18

trial.  *Id.* at 25 (96).  There also is no documentation provided by defense counsel at the January 3 hearing that Mr. Pellow, at the time of the July 11, hearing, had not issued subpoenas, or was unable to obtain a Spanish interpreter within seven days so that the prosecution could proceed with a trial by July 18, 2005.

A review of the July 11 and 28, and August 29, 2005 hearings does not indicate Mr. Pellow deliberately waited to set Applicant's trial within a week of the speedy trial deadline.  Mr. Pellow's explanation, *see* July 7, 2004 Hr'g Tr. at 3 (21), that the setting of the trial was an oversight is no more than negligence on the part of the district attorney's office.  There is nothing to be gained by Mr. Pellow in delaying the trial, and based on my review of the reasons stated by Applicant that Mr. Pellow was not prepared for trial there is no basis for finding a deliberate delay by Mr. Pellow based on any alleged unpreparedness.

It, however, is disconcerting that only a week prior to the July 11, 2005 hearing the prosecutor "just happened" to see the mandate had come back "sometime ago" and requested someone in his office to have a trial set.  Trial Tr., July 11, 2005, at 2.  Furthermore, even though the trial date was set within the speedy trial deadline, there are certain discrepancies in the CCA's findings that do not support a finding that Applicant was totally responsible for the delay in setting a trial.

The CCA's reliance on Colo. Rev. Stat. § 21-1-103 is somewhat compromised by certain docket entries, or the lack thereof, in the criminal case and the failure of the statute to address cases on remand in which indigency has been established and counsel appointed.  Nothing is entered in the register of action, or flat file, in this case that indicates Applicant requested counsel in his first retrial.  Also, the request for

19

appointment of counsel in Applicant's first direct appeal was entered by counsel.  ROA,

Flat File at 271 (318).  Finally, a letter, *id.* at ROA, Flat File, Pet. C.A.R. 21, Appx. D.

(731), from the public defender, who represented Applicant in his first appeal, to

Applicant explained the status of Applicant's case and stated that counsel would be

assigned to the case upon remand.  Based on these findings, I do not agree with the

CCA's argument that Applicant is wholly responsible for the over five month delay in not

seeking appointment of counsel.

However, based on the following findings, this error did not have a substantial

and injurious effect or influence in determining the jury's verdict, *see Brecht v.*

*Abrahamson*, 507 U.S. 619, 631-39 (1993), and is harmless.  Furthermore, the public

has a interest in trying people accused of crimes rather than granting immunization

based on legal error.  *Barker, 407 U.S. at 522 n.16.*

Applicant also is a competent *pro se* litigator.  In Criminal Case No. 99CR4911,

he was able to file the following *pro se*:  Flat File at 690-710 (sequential number on CD;

no number provided on document) (C.A.R. 21 petition March 16,2012); 508-10

(sequential number on CD) (000323-25) (number used by the state court that appears

on the document in state court flat filed) (renewed motion to dismiss July 28, 2005);

501-02 (000378-79) (motion for immediate release July 28, 2005); 476-78 (000353-56)

(renewed motion to dismiss July 11, 2005); 471-73 (000348-50) (renewed motion to

dismiss July 28, 2005); 427-32 (000414-19) (petition for rule to show cause); 174-75

(000100-01) (motion for discovery Apr. 24, 2000).  It, therefore, is unreasonable that

Applicant did not inquire about the assignment of counsel in this case prior to when he

filed the motion to dismiss.

The fact remains, however, that the trial court and the prosecution were responsible for setting a trial date during the time from January 26, 2005, until at the latest July 11, 2005.  To the extent this delay may be responsible for any of the fifteen month delay, it is caused by the prosecution and trial court.

As for the time between January 3, 2006, when the second retrial originally was scheduled, and April 19, 2006, when the trial commenced, the delay is attributed to defense counsel, based on his asserted need to locate witnesses.  At the pretrial conference on January 4, 2006, the day the trial was rescheduled from January 3, 2006, defense counsel requested a continuance.  Trial Tr., Jan. 4, 2006, at 4 (117).  A colloquy between the trial court and Applicant took place during which the court determined that Applicant believed a continuance was necessary, and in his best interest, to obtain additional witnesses, and to do so would require a waiver of his right to a speedy trial.  *Id.* at 15-19 (128-132).

Reasons for the delay in Applicant's trial are not solely attributed to the state for speedy trial purposes.  The continuance for trial and waiver of speedy trial agreed to by defense counsel was to ensure that Applicant received a fair and impartial trial.  There also is no basis for finding that the prosecution and trial court deliberately delayed the setting of the second retrial.  The delay appears to be no more than a negligent act, and probably no more a negligent act than Applicant's failure to inquire about the assignment of counsel for his second retrial.  The reason for the delay, therefore, is split between the trial court and prosecution and Applicant.  Again, this factor does not weigh heavily in favor of Applicant.

The third *Barker* factor is the extent to which the defendant asserted his right to a speedy trial.  A speedy trial right assertion "is given strong weight in deciding whether there has been a speedy trial violation.  *Seltzer*, 595 F.3d at 1179   "[T]he sooner a criminal defendant raises the speedy trial issue, the more weight this factor lends to his claim."  *Jackson*, 390 F.3d at 1263.

Applicant first asserted his speedy trial claim July 11, 2005.  However, Applicant's failure to inquire regarding the assignment of counsel cuts against his outward assertions of a speedy trial violation.  As stated above, Applicant is a capable *pro se* litigant who submitted several *pro se* filings.  He also was very well aware of speedy trial issues, as he dealt with speedy trial issues in this state criminal proceeding, ECF No. 11-1 at 27 and 28; and he knew that he is entitled to counsel in his second retrial, as he was told that counsel would be appointed in the letter dated February 5, 2005.  Yet, Applicant waited until July 11, 2005, a week before the speedy trial deadline ran to question why counsel had not been appointed.  Applicant's actions are somewhat suspect.  Therefore, I find that even though this factor may weigh in favor of Applicant, it is not a heavily weighted factor.

The fourth *Barker* factor is whether the defendant suffered any prejudice.  This factor can be met with or without a particularized showing of prejudice depending on the length of the delay.  *See Jackson*, 390 F.3d at 1263-64.  "In cases of extreme delay, criminal defendants need not present specific evidence of prejudice.  Instead, they may rely on the presumption of prejudice created by the delay."  *Id.* at 1263.  However, there is no clearly established federal law that would relieve a defendant of making a

particularized showing of prejudice when the delay is less than six years.  *See id.* at

1263-64.

"The individual claiming the Sixth Amendment violation has the burden of

showing prejudice."  *Seltzer*, 595 F.3d at 1179 (quotation omitted).   Prejudice is

presumed where there is extreme delay, but where the delay is not extreme a defendant

must make a particularized showing of prejudice.  *See United States v. Tombs*, 574

F.3d 1262, 1275 (10th Cir. 2009); *Seltzer*, 595 F.3d at 1180 n.3 (generally a six-year

delay before allowing the delay itself to constitute prejudice).   In weighing this factor, a

court should keep in mind the policies underlying the speedy trial right as follows: (1)

prevent oppressive pretrial incarceration; (2) minimize the accused's anxiety and

concern; and (3) limit the possibility that the passage of time will impair the accused's

ability to mount a defense. *Id.*  The latter concern is the most serious one of the three.

*Id.*

The delay in this case is not long enough to relieve Applicant of his obligation to

make a particularized showing of prejudice.   In an attempt to show prejudice Applicant

claims he was held 167 days in administrative segregation, did not hear from the

prosecution regarding a trial date until fifteen days before the expiration of the speedy

trial deadline, and then had to choose between his right to a speedy trial and an

unimpaired defense.  Reply, ECF No. 23, at 9-10.

"[G]eneralized and conclusory references to the anxiety and distress . . . [of]

incarceration are not sufficient to demonstrate particularized prejudice."  *United States*

*v. Larson*, 627 F.3d 1198, 1210 (10th Cir. 2010).  Applicant's claims regarding his time

in administrative segregation and need to choose between a right to a speedy trial and

an unimpaired defense are vague accusations.  Applicant provides no detail of how the pretrial incarceration was oppressive or why he was so anxious about deciding whether or not to waive his right to a speedy trial.  Finally, nothing Applicant states in the Application, or counsel asserts in the Reply, identifies how the pretrial delay impaired Applicant's ability to mount a defense.  Applicant, therefore, has failed to identify anything material that was compromised by the pretrial delay.

Even though the CCA did not specifically apply federal law to the facts of the case, the CCA's decision must be upheld unless an independent review of the record "contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Aycox*, 196 F.3d at 1178.  I find no misapplication of federal law or that the CCA's conclusion was unreasonable.

The delay of trial was beyond the presumptively prejudicial twelve month period. The delay, however, was only three months beyond the bare minimum and the reasons for the delay do not weight heavily in Applicant's favor.  Finally, Applicant fails to demonstrate a particular prejudice due to the delay.  The balancing of the *Barker* factors demonstrates Applicant's Sixth Amendment right to a speedy trial was not violated.  The right to speedy trial claim, therefore, will be dismissed.

## B. Right to Self-Representation

Applicant asserts that he was denied his right to self-representation when he waived his right to counsel and invoked his right to represent himself.  Applicant contends that he explicitly asserted his right to self-representation in a timely manner, even before a public defender was appointed.  Application at 15.  Applicant also asserts

that the trial judge did not make a determination that he was knowingly, intelligently, and voluntarily waiving his right to counsel and then arbitrarily denied Applicant his right to represent himself. *Id.* Applicant further contends that the trial judge tried to frighten him into compliance by telling him he had three choices: (1) to waive his speedy trial right and have a public defender appointed; (2) to have a public defender go to trial within the speedy trial deadline, which the judge stated was ludicrous; and (3) to represent himself, which the judge stated was crazy. *Id.* at 16.   Finally, Applicant does, however, concede that he would have preferred to have an attorney, but the public defender refused appointment if he had to go to trial within the speedy trial limitations. *Id.* at 16-17.

Respondents argue that Applicant did not unequivocally request to proceed *pro se* in his second retrial. Respondents base their argument on (1) Applicant's failure to object to the appointed counsel when the public defender's office finally accepted the appointment; (2) the fact that Applicant was represented by counsel in his two prior trials; and (3) Applicant's statement that he was going to trial by himself was a single impulsive statement borne of frustration. Pre-Answer Resp. at 25-26.

In the Reply submitted by counsel, Applicant asserts that he was prepared to represent himself, and even though he agreed to court-appointed counsel he again requested to self-represent when counsel subsequently stated he could not be ready for trial within the speedy trial period. Reply at 11. Applicant further contends that the CCA erroneously found Applicant's request for self-representation to have been done in haste and misapplied state and federal law in its findings. *Id.* at 12.

The CCA addressed the self-representation claim as follows:

A defendant in a criminal case has both a right to counsel (appointed counsel if he is indigent) and a right to represent himself.  *See* U.S. Const. amend. VI; Colo. Const. art. II, § 16; *Faretta v. California*, 422 U.S. 806, 807, 813-20 (1975); *People v. Romero*, 694 P.2d 1256, 1263 (Colo. 1985).  These rights are obviously in tension.  But, recognizing that the right to counsel affects a defendant's ability to exercise other rights, the Supreme Court has instructed that a court must "indulge in every reasonable presumption against [its] waiver." *Brewer v. Williams*, 430 U.S. 387, 404 (1977); *accord People v. Arguello*, 772 P.2d 87, 93 (Colo. 1989); *see also People v. Abdu*, 215 P.3d 1265, 1267 (Colo. App. 2009).  Therefore, a court must accede to a defendant's request to represent himself only if the defendant's waiver of his right to counsel is voluntary, knowing, intelligent, and unequivocal.  *See People v. Alengi*, 148 P.3d 154, 159 (Colo. 2006) (court must ascertain, under the totality of the circumstances, whether the defendant's waiver is voluntary, knowing, and intelligent; record must show "an unequivocal intent to relinquish or abandon defendant's] right to representation"); *Arguello*, 772 P.2d at 93 ("before a defendant is allowed to proceed *pro se*, the defendant must first effect a valid waiver of the right to counsel"); *Abdu*, 215 P.3d at 1267-68.

"A trial court evaluating a defendant's request to represent himself must 'traverse . . . a thin line' between improperly allowing the defendant to proceed *pro se*, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation." *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995) (en banc) (quoting in part *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990)).  Because of the delicate nature of this task, the Colorado Supreme Court requires that a district court carefully and thoroughly advise a defendant on the record of the consequences of waiving his right to counsel and representing himself before finding that a defendant has waived his right to counsel.  *Arguello*, 772 P.2d at 95-96.

Here, as noted, the district court found that defendant had implicitly waived his speedy trial right because he desired to be represented by the Public Defender and knew the Public Defender could not be ready for trial within the speedy trial period.  The court found, albeit implicitly, that defendant had not unequivocally waived his right to counsel and invoked his right to proceed pro se. In setting a trial date beyond the six-month deadline, the court acted in accordance with case law holding that where a defendant does not waive either his right to a speedy trial or his right to counsel, and an extension of a trial date beyond the speedy trial deadline is necessary to protect the defendant's right to effective assistance of counsel, the delay is chargeable to the defendant and there is no speedy trial violation.  *See, e.g., People ex rel. Gallagher v. Dist. Court*, 933 P.2d 583, 588-89 (Colo. 1997); *People v. Jefferson*, 981 P.2d 613, 614-15 (Colo. App. 1998).

No Colorado appellate decision has held what standard of appellate review applies to a trial court's finding that a defendant only equivocally indicated a desire to represent himself.  Some courts have held that such a finding is one of fact, to which an appellate court must defer unless it is clearly erroneous. *See United States v. Mackovich*, 209 F.3d 1227, 1236-37 (10th Cir. 2000); *Fields*, 49 F.3d at 1029-32; *Hamilton v. Groose*, 28 F.3d 859, 862 (8th Cir. 1994); *Cain v. Peters*, 972 F.2d 748, 749 (7th Cir. 1992); *DeGroot v. State*, 24 S.W.3d 456, 457 (Tex. App. 2000).  These courts reason that this type of question is one as to which the trial court is better positioned to decide.  As the Fourth Circuit Court of Appeals has explained in this context:

> The clarity and unequivocality of a defendant's expression is determined not only by the words he speaks, but by his way of speaking them and his manner and demeanor when he is speaking; undeniably, the same words can express different degrees of certainty depending on how they are spoken.  A transcript of the state trial court proceedings can reveal neither the way a defendant spoke when he indicated his desire to represent himself nor the manner and demeanor he assumed at the time of this indication.

*Fields*, 49 F.3d at 1031.  Other courts, however, have held that the question is subject to de novo review on appeal.  *See People v. Marshall*, 931 P.2d 262, 273 (Cal. 1997) (holding, after surveying case law from other jurisdictions, that the question is "primarily" one of law subject to de novo review); *State v. Ochoa*, 675 N.W.2d 161, 169-70 (N.D. 2004).  And in *Abdu*, 215 P.3d at 1267, a division of this court held that the question whether a trial court erroneously denied a defendant's right of self-representation – an arguably qualitatively different question than whether a defendant unequivocally expressed a desire to represent himself – is subject to de novo review, at least where no historical facts are in dispute.[3]

---

[3]  In Colorado, the question whether a defendant voluntarily, knowingly, and intelligently waived his right to counsel is regarded as a mixed question of law and fact that we review de novo. *See People v. Bergerud*, 223 P.3d 686, 693 (Colo. 2010); *People v. Smith*, 77 P.3d 751, 757 (Colo. App. 2003); *People v. Stanley*, 56 P.3d 1241, 1244 (Colo. App. 2002).  It may be, however, that the relative equivocality of a defendant's invocation of his right to self-representation is more fact intensive and dependent on factors an appellate court is ill-suited to evaluate. *See Fields*, 49 F.3d at 1030-32 & n.9 (discussing the difference between the two questions for purposes of determining the appropriate standard of review).

We need not decide which standard of review applies, however, because defendant cannot prevail under either. Numerous courts (even those applying de novo review to this question) have held that a court may disregard a defendant's request to represent himself that is made out of temporary whim or annoyance: such expressions are deemed equivocal. *See, e.g.*, *Reese v. Nix*, 942 F.2d 1276, 1279, 1280-81 (8th Cir. 1991) (the defendant's statement, "Well, I don't want no counsel then," was equivocal because it was an impulsive response to the court's denial of his request for new counsel); *Jackson v. Ylst*, 921 F.2d 882, 888-89 (9th Cir. 1990) (the defendant's statement, "I want to fight it pro per then. Relieve [my attorney] and I do this myself," was equivocal because it was an impulsive response to the court's denial of his request for new counsel); *Marshall*, 931 P.2d at 269, 270-74 (the defendant's statement, "I would like to fire this attorney and go pro per," was equivocal because it was an impulsive response to adverse rulings); *People v. Hacker*, 563 N.Y.S.2d 300, 301 (N.Y. App. Div. 1990) (the defendant's statement that he wanted to represent himself was equivocal because it was an impulsive response to the court's denial of his request for new counsel); *State v. Torkelsen*, 752 N.W.2d 640, 655-56 (N.D. 2008).

Here, defendant's apparent expression of a desire to represent himself, read in context, was an impulsive act borne of frustration with the length of time it was taking to bring him to trial and the Public Defenders' statements that they could not be ready for trial in one week. As noted, defendant had previously been represented by appointed counsel throughout the case, at his behest, and clearly expressed his desire at the July 11 hearing to be represented by court-appointed counsel. That he might represent himself was not even his own idea, but one the court broached when the Public Defenders indicated they could not be ready for trial by July 18. Defendant responded to that idea impulsively. And after he did so, and after the court had indicated that defendant had not waived his right to counsel, defendant did not reassert his desire to represent himself at the hearing. *Cf. People v. Edwards*, 101 P.3d 1118, 1120 (Colo. App. 2004) (where, after the defendant's attorney was allowed to withdraw, the defendant twice requested to proceed to trial and said he was prepared to represent himself, but court appointed new counsel and the defendant did not thereafter ask to be allowed to represent himself, the defendant did not unequivocally invoke right of self-representation), *aff'd*, 129 P.3d 977 (Colo. 2006).[4]

---

[4] We also observe that, although a court must first determine whether a defendant has validly waived his right to counsel before allowing him to represent himself, *see Arguello*, 772 P.2d at 93, the district court did not inquire of defendant pursuant to *Arguello*, and the record does not otherwise support a

finding of such a waiver.  This supports the conclusion that the district court
believed defendant did not desire to waive his right to counsel.

Pre-Answer Resp., ECF No. 11-6, Ex. E at 10-16.

In *Faretta v. California*, 422 U.S. 806, 807 (1975), the United States Supreme

Court held that the Sixth Amendment affords a criminal defendant the right to proceed

without counsel.  *See United States v. Loya-Rodriguez, a.k.a. Protillo-Loya*, 672 F.3d

849 (10th Cir. 2012).  The Supreme Court also acknowledged that the right "cut[s]

against the grain of [the] Court's decisions holding that the Constitution requires that no

accused can be convicted and imprisoned unless he has been accorded the right to

assistance of counsel."  *Faretta*, 422 U.S. at 832.  The Court further recognized that

usually self-representation is inferior to representation by an attorney, *id.* at 834, and

cautioned the court to ensure that the choice of proceeding without counsel is made

"knowingly and intelligently" and only after a defendant is "made aware of the dangers

and disadvantages of self-representation, *id.* at 835.

If a court "incorrectly determines that a defendant has elected self-

representation, it has deprived him of the constitutional right to be represented by

counsel.  But if it incorrectly determines that the defendant has not elected self-

representation, it has likewise deprived him of a constitutional right."  *United States v.*

*Miles*, 572 F.3d 832, 836 (10th Cir. 2009).  "[I]f a defendant in a criminal proceeding

makes an *equivocal* demand on the question of self-representation, he has a potential

ground for appellate reversal no matter how the district court rules."  *United States v.*

*Treff*, 924 F.2d 975, 979 (10th Cir. 1991).

A defendant can represent himself only after four conditions are met.  *Loya-Rodriguez*, 672 F.3d at 856.

> First, the defendant must clearly and unequivocally inform the district court of his intention to represent himself.  Second, the request must be timely and not for the purpose of delay.  Third, the court must conduct a comprehensive formal inquiry to ensure that the defendant's waiver of the right to counsel is knowingly and intelligently made.  Finally, the defendant must be able and willing to abide by rules of procedure and courtroom protocol.

*Id.* (citing *United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006)) (citations and internal quotation marks omitted).  The right to self-representation is not absolute.  *United States v. Akers*, 215 F.3d 1089, 1097 (10th Cir. 2000).  A court is not obliged to accept every defendant's invocation of the right to self-representation and may terminate the right to self-representation even after the right is unequivocally asserted.  *Munkus v. Furlong*, 170 F.3d 980, 984 (10th Cir. 1999) (citations omitted).

The CCA found Applicant's statement that he desired to represent himself was impulsive and a result of frustration with the time it was taking to bring him to trial.  ECF No. 11-6 at 15.  The CCA further noted that Applicant had been represented by appointed counsel throughout the case, clearly expressed his desire to be represented by counsel, and only sought to proceed *pro se* when the public defenders stated they could not be ready for trial by July 18.  *Id.*  The CCA also found that after the trial court ruled Applicant had not waived his right to counsel he did not reassert his desire to represent himself at the hearing.  *Id.* at 16.

I have reviewed the transcripts for the July 11, 2005 pretrial hearing when the self-representation issue was before the trial court.  At this hearing, when Applicant was asked if he wanted the court to appoint a public defender or if he wanted to represent

30

himself, Applicant responded that he wanted the public defender appointed.  Trial Tr., July 11, 2005 Hr'g at 6 (6).  Applicant also acknowledged that he was not prepared to proceed to trial.  *Id.*  Only when the public defender stated that he would not be effective and would not accept the appointment for a trial within a week did Applicant state that he would proceed *pro se* and stated he would not waive his right to a speedy trial.  *Id.* at 12 (12).  At this point the trial court acknowledged that a balancing of all the factors was necessary and stated the court's responsibility was to look out for Applicant's best interests.  *Id.* at 16 (16).  The trial court found that under the circumstances the public defender's office would be appointed and Applicant's right to a speedy trial was waived. *Id.*

When Applicant stated that he was "ready to go," *id.* at 6 (6), it was not unequivocal and clear that he intended to represent himself.  Applicant had stated he was not prepared to proceed *pro se* and only insisted to proceed based on his refusal to waive his speedy trial rights.  Applicant, therefore, failed to meet the first condition required under *Tucker* to establish he was able to represent himself.

The state court's factual findings, which are presumed correct in a  federal habeas proceeding, are supported by the state court record.  *Id.* at 6(6), 12(12), and 16(16).  The CCA's application of these facts follows the clearly established federal law in *Faretta* and *Brewer*.  Accordingly, the CCA decision regarding the self-representation claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding.  This claim, therefore, lacks merit and will be dismissed.

## IV.  Conclusion

For the foregoing reasons, it is

ORDERED that the Application, ECF No. 1 is DENIED and the action is dismissed with prejudice.  It is

FURTHER ORDERED that the issuance of a Certificate of Appealability pursuant to 28 U.S.C. § 2253(a) is denied.  Applicant has not made a substantial showing of the denial of a constitutional right such that reasonable jurists could disagree as to the disposition of his petition pursuant to the standards of *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  *See* 28 U.S.C. § 2253(c)(2).  It is

FURTHER ORDERED that it is certified pursuant to 28 U.S.C. § 1915(a)(3) any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED this  9th  day of _____October_____, 2014.

BY THE COURT:

  s/Lewis T. Babcock_____
LEWIS T. BABCOCK, Senior Judge
United States District Court